IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DORELIS R.,** ) | |
| ) | No. 22 C 135 |
| **Plaintiff,** ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| **KILOLO KIJAKAZI, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION AND ORDER

Dorelis R. appeals the Acting Commissioner's decision denying her application for Social Security benefits. For the reasons set forth below, the Court reverses the Acting Commissioner's decision.

### Background

On July 5, 2019, plaintiff filed an application for benefits, which was denied initially, on reconsideration, and after a hearing. (R. 23-33, 166-215.) The Appeals Council declined review (R. 1-3), leaving the ALJ's decision as the final decision of the Acting Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in

other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920. The Acting Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 27, 2018, the alleged disability onset date. (R. 26.) At step two, the ALJ found that plaintiff has the severe impairments of pseudo seizures,[1] bilateral occipital neuralgia,[2] and anxiety. (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (*Id.*) At step four, the ALJ found that plaintiff is unable to perform any past relevant work but has the RFC to perform

---

[1] Pseudo seizures are also called psychogenic nonepileptic seizures and are not the product of abnormal brain activity but of psychological conditions. *See* https://www.epilepsy.com/diagnosis/imitators-epilepsy/psychogenic-nonepileptic-seizures (last visited Jan. 11, 2023).
[2] Occipital neuralgia is a headache disorder that affects the nerves that run through the scalp. *See* https://my.clevelandclinic.org/health/diseases/23072-occipital-neuralgia (last visited Jan. 11, 2023).

light work with certain exceptions. (R. 28, 31.) At step five, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, and thus she is not disabled. (R. 31-32.)

Plaintiff first contests the ALJ's analysis of her symptom allegations, about which the ALJ said:

> The severity of the claimant's allegations of a [sic] pseudoseizures, anxiety and neck pain are not supported by objective medical imaging, including a normal EMG, an MRI that noted mild left neural foraminal narrowing and very mild ulnar sensory neuropathy. . . . Further, the claimant has limited mental health treatment, and the psych examinations in the file found intact memory, concentration, and were negative for depression and anxiety. . . . Given the claimant's level of treatment, actual level of functioning, and relatively benign exams during the relevant period, no further limitations [other than those in the RFC] are supported.

(R. 31.)

The ALJ's analysis with respect to plaintiff's pseudo seizures and anxiety is confusing and unsupported. The ALJ found that plaintiff's pseudo seizures are a severe impairment, *i.e.*, they significantly limit her ability to do work activities, 20 C.F.R. § 404.1522(a), and are caused by anxiety. (R. 29 (citing R. 838).) Yet, he said, without citing any evidence, that plaintiff had "limited mental health treatment" and her psychological exams "were negative for . . . anxiety." (R. 31.) In fact, the record shows that plaintiff received mental health treatment every few weeks from March 2018 through October 2020, and her medical records are replete with notes attributing her pseudo seizures to anxiety and/or stating that plaintiff was diagnosed or presented with anxiety. (*See* R. 527, 537, 551, 555-56, 563, 567, 579, 608-09, 611-12, 622, 625-26, 635, 651-726, 737-59, 767-812, 829-30, 834, 838-39, 843, 854-56, 858-59, 863, 867-68, 872, 885-86, 889-90, 920-46, 1020-1058.) Further, the ALJ's statement that plaintiff's allegations about her pseudo seizures and anxiety "are not supported by objective medical imaging" is inapt. Doctors use psychological evaluations, not medical imaging, to diagnose anxiety. *See* https://www.mayoclinic.org/diseases-

3

conditions/anxiety/diagnosis-treatment/drc-20350967 (last visited Jan. 11, 2013).  In addition, though plaintiff had two negative EEGs—one of the tests used to diagnose epilepsy, https://www.mayoclinic.org/tests-procedures/eeg/about/pac-20393875 (last visited Jan. 11, 2023)—her doctor did not conclude from those results that plaintiff did not have pseudo seizures. Rather, the doctor said: "Looks like pt has nonepileptic jerking; intermittent jerking which sounds like myoclonus jerk,[3] but since pt has back to back jerking for 15-30 min and has had 2 Neg EEG; her jerking comes [sic] anxiety."  (R. 537.)  In short, the ALJ's symptom assessment is not supported by substantial evidence.

Moreover, that error is not harmless.  *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("The doctrine of harmless error indeed is applicable to judicial review of administrative decisions.").  The vocational expert testified that employees generally receive two fifteen-minute breaks and a lunch break during the workday and must be on task eighty-five percent of the workday to maintain competitive employment.  (R. 67.)  Plaintiff testified that her pseudo seizures last for fifteen minutes at a time and occur three or four times a day (R. 51), *i.e.*, they consume up to an hour day.  If the ALJ had credited plaintiff's testimony, he could not, given the VE's testimony, have concluded that plaintiff was capable of competitive work.  Because the ALJ's faulty symptom evaluation was not harmless, this case must be remanded for further proceedings.

---

[3]"Myoclonus refers to a quick, involuntary muscle jerk." *See* https://www.mayoclinic.org/diseases-conditions/myoclonus/symptoms-causes/syc-20350459 (last visited Jan. 11. 2023).

**Conclusion**

For the reasons set forth above, the Court reverses the Acting Commissioner's decision, denies the Acting Commissioner's motion for summary judgment [18], and pursuant to the fourth sentence of 42 U.S.C. § 405(g), remands this case for further proceedings in accordance with this Memorandum Opinion and Order.

**SO ORDERED.**  ENTERED:  March 30, 2023

**M. David Weisman**
**United States Magistrate Judge**